UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

UNITED STATES OF AMERICA,

   - against -

                                    Docket No. 17 Cr. 151 (AJN)

ROBERT PIZARRO and JUAN RIVERA,

                     Defendants.
_____X

## **DEFENDANTS' JOINT MOTION TO DISMISS BASED ON DUE PROCESS VIOLATIONS**

## **INTRODUCTION**

      The defendants file this motion to dismiss based on the government's chronic and egregious suppression of *Brady* information until days before trial that prevented the defense from utilizing the information in its defense. Trial was originally scheduled to begin May 7, 2018. One business day before, May 4, 2018, the government disclosed a detailed confession to the murder of Bishun that Gabriel Guillen had made on September 27, 2016 ("Guillen's confession"), and that the government had been in possession of since the day it was made. Despite ongoing *Brady* demands that specifically requested this type of information the government not only actively withheld Guillen's confession but affirmatively informed the defense that it was aware of and complying with its *Brady* and *Giglio* obligations. The trial was adjourned to May 17, 2018 for the defense to investigate the newly disclosed information. On May 13, 2018, three business days before the start of the second scheduled jury selection, the government made an additional *Brady* disclosure regarding information provided by a District Attorney's Office of New York cooperating witness ("DANY CW") regarding an alternative

perpetrator. The government was in possession of that information since on or about October 2016. From May 13, 2018 to date, the government has continued to disclose new information relating to both Guillen's confession and the DANY CW alternative perpetrator information.

Simply put, the defense is unable to keep up and is at an unfair disadvantage. Due to last minute *Brady* disclosures, including two sources of significant third party perpetrator information the defense does not have time to utilize – let alone understand and digest the significance of this information- at the same time it is preparing for imminent trial. While the defense wishes to submit a more thorough account of the government's disclosures and lack thereof, and the significant prejudice to the defense, the lack of time until jury selection prevents us from doing so.[1] Moreover, in addition to lacking the time to fully investigate and utilize the information, much of the evidence no longer exists. For example, most of the individuals the defense needs to interview, such as Gabriel Guillen, have since been arrested and are now represented by counsel and are asserting their Fifth Amendment rights. Social media accounts that were once active on sites like Instagram have been deactivated, posts removed, or profiles made private. For the most part, leads have dried up and what does exist is unlikely to be discovered in time to use it in a defense at trial.

For reasons contained herein, the defense is substantially prejudiced by the government's eve of trial *Brady* disclosures and for this reason the defendants' Due Process rights have been violated and the indictment must be dismissed.

---

[1] The defense intends to continue to supplement this filing on the record at the next appearance, or through additional briefing upon request.

## PERTINENT FACTS

On September 20, 2016, Robert Bishun was taken from his autobody shop and later found lifeless with a zip tie around his neck. At the time of his death, Mr. Bishun had been a federal cooperating witness against corrupt ex-NYPD Officer Merlin Alston ("Alston") charged with narcotics trafficking, and others, and was scheduled to testify in a Southern District of New York trial that was scheduled to begin within two weeks of Bishun's murder. For years, Bishun had been a major narcotics trafficker in the Bronx who was deeply ingrained in the drug business. Information provided by the government through discovery and 3500 materials confirmed that Bishun had, over the years, been the target of multiple robberies and that other drug traffickers had disagreements with him stemming from the drug business. At the time of his death, not only had his cooperation likely been made public, ██████████████████ ████████████████████████████████████████████████████████ ████████ In short, the information suggests that there were many people with a motive to murder Bishun.

Defendants Robert Pizarro and Juan Rivera were arrested and charged with Bishun's attempted robbery, kidnapping and murder in March 2017. At the time, the government was in possession of Guillen's confession and the DANY CW alternative perpetrator information but did not disclose any of it.

Specifically, with regard to the 2016 charges against defendant Pizarro, there is a dearth of direct evidence. There is no DNA evidence, no fingerprints, and no eyewitness identifications. There is no evidence proving that Pizarro was at the Bishun's auto body shop on September 20, 2016. Rather, the government's evidence is circumstantial, consisting of imprecise cellular site evidence, phone records possibly showing contact with codefendant Juan Rivera, toll records

showing that the Black Yukon crossed certain bridges on September 20, 2016, Google searches for Bishun's murder, and various social media posts none of which directly reference Bishun or his murder. The government relies largely on ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████

      At the December 7, 2017 guilty plea of this cooperating witness, the Court asked the government for a proffer of what the evidence of the charged Conspiracy to Commit Hobbs Act Robbery, Hobbs Act Robbery and Firearms Counts would consist of and the government responded that the evidence consisted of the cooperating witnesses' own admissions in the proffer sessions. *See* December 7, 2017 sentence transcript at pages 30-32. The government did not cite to any corroborating evidence, contrary to claims in its motions *in limine* and oral arguments on April 30, 2018 that corroborating evidence exists to satisfy Rule 801(d)(2)(E). See Government's Reply Memorandum of Law in Further Support of its Motions *In Limine* filed April 25, 2018, ("cell-site evidence, and geolocation data, as well as various documents, corroborate the anticipated witness testimony"). Based on the cooperating witness's plea minutes the defense renews its objections to admission of co-conspirator statements and requests this Court order that the government produce any corroborating evidence, if any exists.

*The Suppression of Guillen's September 27, 2016 confession until May 4, 2018*

      Seven days after Bishun's death, CI-1 reported to federal law enforcement agents that Gabriel Guillen drove CI-1 by the location of Bishun's auto body shop, where the kidnapping occurred and provided a detailed confession to involvement in Bishun's homicide. Guillen, who

had dealt drugs with Bishun from 2007-2012, and who also knew Alston, described in detail how Alston ordered Bishun's homicide:



The government does not dispute that Guillen made this confession but instead characterizes it as "false."[2]

On December 11, 2017, while in possession of Guillen's confession, the government disclosed a recorded conversation between CI-1 and "Individual A" (who the defense later learned was Guillen) and two screen shots of text messages in Spanish. The defense was not informed in the accompanying Rule 16 discovery letter that this disclosure contained any or related to *Brady* evidence, or that the texts and recording involved an individual who provided a detailed confession to Bishun's murder.[3]  Instead, it was unclear whether the recording contained statements by or involving the charged defendants, whether the recording implicated our clients,

---

[2] The government provided that Guillen, after he had been indicted on an unrelated federal indictment admitted to another information, CW-1, that he had confessed to his involvement in the murder. However, the government asserts that CW-1 will say that Guillen said he had been lying about his involvement.

[3] The recording contains no confession by Guillen or any other information that would have led defense counsel to believe that the individuals on the recording had involvement in the Bishun homicide.

and what the import of the text messages was. Nonetheless, defense counsel reviewed and attempted to understand the significance of this Rule 16 discovery.

Due to the vague and limited nature of the December 11, 2017 discovery letter, attorney Louis Freeman requested additional information on January 22, 2018 regarding the participants in the conversations and was informed by AUSA Margaret Graham that the government would respond with additional information. In response, on January 25, 2018, the government provided a letter stating in sum and substance that the text messages were fabricated by CI-1 and that CI-1 had provided no other information to the government: "other than the communications with Individual-A recounted above, [CI-1] had no involvement in the Bishun murder investigation." This was later found to be untrue because on September 27, 2016 CI-1 had provided federal agents with Guillen's detailed confession to the murder.

In a letter dated February 4, 2018 sent via electronic mail to the AUSAs, the defense demanded "all *Brady* and *Giglio* materials relating to CI-1" and requested additional information about CI-1 and Individual A and the text messages, among other information. The defense specifically requested:

- Other information provided by CI-1 that the government suspects is untrue
- Any and all information that CI-1 supplied to the government surrounding the homicide of Bishun

In the government's response, dated February 8, 2018, the government first disclosed the name of Individual-A, Gabriel Guillen, but then led the defense to believe that the entirety of CI-1's information surrounding Guillen had been disclosed. Though the defense affirmatively requested any other information provided by CI-1 surrounding the homicide of Bishun, the government inaccurately responded that there was none:

> Other than as described in the Government's January 25, 2018
> correspondence, CI-1 had no involvement in the instant investigation, and
> has not provided any additional information surrounding the homicide of
> Robert Bishun.

*See* government's February 8, 2018 letter.

The defense continued to request more information, and in a *Brady* demand dated April 16, 2018 requested more information surrounding CI-1 and Guillen. The defense specifically requested, "DD5s, ROIs, and any and all reports reflecting the investigation into CI-1 and/or Guillen relating to the Bishun homicide." However, it was only after the defense filed a Joint Motion for an Order requiring the government to provide all *Brady* evidence, on the Friday before the trial's scheduled May 7, 2018 commencement, that the government disclosed Guillen's confession. This disclosure on May 4, 2018, was the first time the defense learned that Guillen provided a detailed confession to the murder on September 27, 2016 in front of Bishun's auto body shop, as well as other critical information, including that Guillen's was personally connected to both Alston and Bishun, that Alston arranged for the murder, and that a group of men identified in Guillen's confession were hired to carry it out.

On May 6, 2018, the defense filed a motion to dismiss and or adjourn the case due to a *Brady* violation. On May 7, 2018, the Court heard arguments regarding the issue and the defense made an *ex parte* record that is under seal as to investigative steps it would must take now that the undersigned is in possession of the information from the September 27, 2016 confession.[4]

---

[4] At the conference, the parties discussed the defense demands contained in its February 4 and April 16 letters regarding other text communications between Guillen and CI-1, defense demand to inspect the phones involved, and related demands. The government, in sum and substance provided that the only screenshots of text messages that it was in possession of were the two screenshots disclosed to the defense, that it did not have Guillen's phone, and that CI-1 had "lost" his telephone. It is submitted that it defies credulity that law enforcement would not either retain the CI-1's cellphone or download the entirety of the contents of the phone upon learning that the phone possibly contained an admission to a homicide on it. The defense renews its

The case was adjourned for jury selection to commence May 17 and opening statements for the morning of May 21, 2018.

On May 15, 2018, the government filed a letter disclosing evidence that Guillen made statements to CI-1 about the murder of Bishun. The defense is now forced to conduct an additional investigation regarding this newest disclosure. It is impossible to do so the day before jury selection is set to begin.

### *DANY CW's October 2016 information was suppressed until May 13, 2018*

In October 2016, the Office of the District Attorney for New York County ("DANY") informed the Government that a cooperating witness housed at Rikers Island possibly had information relating to the Bishun homicide. ████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████

---

demand for the requested information, and if it is not available, additional information regarding the steps law enforcement took upon receipt of the text messages.

[5] While the notes themselves are unclear, *Brady* extends to exculpatory oral statements as well and information that is not memorialized in written notes or memorandum. The government's is obligated to disclose such exculpatory oral information as well. The defense is concerned that there is other *Brady* information surrounding the Guillen confession, DANY CW, or other evidence that was never memorialized in written and as a result was never turned over to the defense. This is particularly true where various law enforcement agents have investigated Bishun's homicide and at least one AUSA is no longer on the case. *Brady* extends to information – oral or written- in possession of these individuals as well. *See United States v Rodriguez*, 496 F3d 221, 222 (2d Cir. 2007) ("When the Government is in possession of material information that impeaches its witness or exculpates the defendant, it does not avoid the obligation under *Brady/Giglio* to disclose the information by not writing it down.").

[6]

Due to the disclosure of this information just days before jury selection scheduled for May 17, 2018, the defense has not been able to conduct any real investigation of the DANY CW information. The defense received DANY CW's name at approximately 9:30pm on May 15, 2018 and was informed he is currently incarcerated at Rikers Island. In the same letter the defense was informed that ███████████ is incarcerated at Downstate Correctional Facility. The government provided the names of the NYPD detectives and Assistant District Attorney from DANY who worked on the case. Defense counsel has not yet had the opportunity to meet with these individuals. However, upon information and belief, they are in possession of additional information regarding the extent of DANY CW's information regarding the Bishun homicide that will likely be important to the defense investigation.

LAW

It is well-settled law that a Brady violation occurs where there is "suppression by the prosecution of evidence favorable to an accused . . . [that] violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The essential purpose of *Brady* is to ensure the reliability of a criminal verdict. *United States v. Agurs,* 427 US 97, 112 (1976). The government has a duty to disclose information whose exculpatory value is obvious even when there has been no demand by the defense. *Id.* at 107. Here the exculpatory evidence is obvious and the defense has made numerous demands for all *Brady* evidence throughout the pendency of the case.

There are three components of a *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice

must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999); *see also Leka v. Portuondo*, 257 F.3d 89, 98 (2d Cir. 2001) (same). Prosecutors are broadly required to turn over exculpatory and impeachment evidence whether or not requested by the defense. *Giglio v. United States*, 405 U.S. [150,] 154-55, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); *Tate v. Wood*, 963 F.2d 20, 25 (2d Cir.1992). This includes not only evidence that goes towards negating a defendant's guilt but also any information that if disclosed would affect the outcome of the case or "would have put the case in such a different light as to undermine confidence in the outcome." *See United States v Rivas*, 377 F3d 195, 199 (2d Cir. 2004). Importantly, this includes information that is inconsistent with the government's theory, and information that harmonizes with the defense theory even if that information is also inculpatory. *See United States v Mahaffy*, 693 F3d 113, 130 (2d Cir. 2012) *citing United States v. Triumph Capital Grp.*, 544 F.3d 149, 164 (2d Cir. 2008); *Rivas*, 377 F.3d at 199-20. Exculpatory evidence also includes information that impeaches the credibility of the government's witnesses. *United States v. Bagley*, 473 US 667, 676-77 (1985); *Giglio* at 154-55 (1972). For these purposes, a "witness" includes a hearsay declarant whose out-of-court statements the government seeks to introduce and who is subject to impeachment pursuant to Rule 806. *See United States v Jackson*, 345 F3d 59 (2d Cir. 2003). The categorization of evidence as *Brady* includes evidence that has both exculpatory and inculpatory aspects. *See United States v. Mahaffy*, 693 F3d 113, 130 (2d Cir. 2012); *United States v Rivas*, 377 F3d 195, 199-200 (2d Cir. 2004).

Critically, merely because the government believes the information is unreliable or if the government possesses evidence that contradicts the exculpatory evidence it does not negate the exculpatory nature of the evidence. *See United States v. Rittweger*, 524 F3d 171, 181 (2d Cir. 2008). The government remains obligated to disclose the evidence nonetheless. Whether the

government believes a confession or other exculpatory evidence to be "false" or unreliable does not relieve the government of its duty to disclose it.

*Brady* evidence must be disclosed in a timely manner that provides the opportunity for the defense to make effective use of the information at trial. *United States v. Coppa* (In re United States), 267 F3d 132, 135 (2d Cir. 2001). A pre-trial failure to disclose exculpatory information violates *Brady* when the defense is deprived of a reasonable opportunity to investigate the information or otherwise use it effectively. *Grant v Alldredge*, 498 F2d 376 (2d Cir. 1974) (failure to disclose identification of other suspect as the robber deprived the defense of the opportunity to investigate other suspects); *Leka*, 257 F.3d at 101 (disclosures of identity of exculpatory witness three business days before trial was insufficient because defense did not have the opportunity to investigate witness's potential testimony). Suppression of *Brady* evidence occurs when information is known to the prosecution and unknown to the defense. *Agurs*, 427 U.S. at 103; *United States v Ruggiero*, 472 F2d 599, 604 (2d Cir. 1973).

Suppression of *Brady* evidence violates due process regardless of the good faith of the prosecutor. *See Brady* 373 U.S. at 87; *Agurs*, 427 U.S. at 110.

ARGUMENT

*The suppressed information is Brady because it is exculpatory and material*

In the instant case, the exculpatory nature of the suppressed information is obvious and there is no good faith argument to the contrary. Where Pizarro and Rivera are charged with attempted robbery and the kidnapping and killing of Bishun, alternative perpetrator evidence such as Guillen's detailed confession to Bishun's murder or DANY CW's information regarding a third party murder conspiracy is clearly exculpatory. This is particularly true where Guillen provides a personal connection to both Bishun and Alston, a motive, and details about who and

how the murder was carried out. Similarly, information from  is clearly exculpatory to the charged defendants. Critically, it is immaterial to the *Brady* analysis whether the government believed this information to be false or unreliable.[8]

Moreover, the withheld information is highly material to the defendants. In the government's motion *in limine,* prior to disclosing any of the relevant alternative perpetrator *Brady* information, the government moved *in limine* to preclude the defense from admitting or cross examining alternative perpetrator evidence due to a lack of evidentiary nexus.[9] Meanwhile, unbeknownst to the defense, the government had been suppressing alternative perpetrator information that was itself *Brady* and that if disclosed could have provided the nexus, or at the very least could have led to the defense establishing such a nexus or other admissible evidence.

Additionally, where the defendants have every right to defend against the charges based on an alternative perpetrator theory, the suppressed information regarding two distinct groups of alternative perpetrators is clearly relevant and material. In fact, there is no way the government can assert that this information is *not material* because the government has no idea how the defense would have utilized the information had it been timely disclosed, what evidence the

---

[8] The government has emphasized that it believes both the September 27, 2016 confession and the DANY CW information to be false and unreliable as if this somehow justifies the withholding of exculpatory evidence. If anything, this characterization of the information as false evinces that the government willfully withheld this evidence because it found it not to be credible and did not wish the defense to utilize it in defending against the charges.

[9] The government only disclosed Guillen's confession and DANY CW's alternative perpetrator information after the defense publicly filed its motion for an Order from the Court and attached its numerous demands for *Brady* evidence.

defense could have uncovered through this information, and the ways in which the defense could have used it to establish a nexus and formulate its defense to the charges.

*The suppression amounts to a Due Process violation because the defense can no longer use the information*

The government's suppression of the *Brady* information for a period of approximately 14 months, from March 2017 through May 13, 2018, has significantly prejudiced the defense as it is not able to effectively use the information in its defense. As Judge Parker described in *Mahaffey:*

> The government's *Brady* violations have negatively impacted this case in two distinct but related ways. First, the two trials were both unfairly skewed against the defendants, who were forced to mount their defenses without the benefit of material exculpatory and impeaching sworn testimony. Second, the costs of this   litigation – in terms of personal, financial and judicial resources and time – have ballooned ….
>
> Our Court and others have long recognized that *Brady* violations obscure a trial's   truth seeking function and, in so doing, place criminal defendants at an unfair disadvantage. When the government impermissibly withholds *Brady* material, "its   case [i]s much stronger, and the defense case much weaker, than the full facts would . . . suggest[]." *Kyles*, 514 U.S. at 429. Where, as here, "the government suppressed evidence in its possession which was both exculpatory and impeaching, . . . there is a reasonable probability that if the evidence had been disclosed, the outcome of the proceeding would have been different." [citations omitted]. Even if "[i]t is by no means certain that" arguments based on wrongfully   withheld evidence "would have swayed the jury, . . . it is a real enough possibility to undermine confidence in the verdict." *Id*. at 163. As close as the trials were, the defendants' assertion, that there is a reasonable probability that they would not have been convicted had the transcripts been disclosed, strikes with particular force.

*See United States v Mahaffy*, 693 F3d 113, 133-34 (2d Cir. 2012).

As it stands, the late disclosures have unfairly skewed the trial against the defendants who were deprived of the exculpatory evidence in time to cultivate it and utilize it in their defense. The obvious and cumulative prejudice from disclosure of Guillen's confession and the DANY CW information just days before trial has, due to major time constraints, handicapped the

defense's ability to investigate and utilize the information in its formulation of a defense. Since the May 7, 2018 conference the government has disclosed the DANY CW information. At the last minute it is impossible to investigate all of the individuals named in the government's ongoing disclosures, digest the information provided, identify links between individuals that were first provided in the May 2018 disclosures and Bishun, identify links between individuals that were first provided in the May 2018 disclosures and Alston or other individuals with a motive to murder Bishun, and identify possible links between the individuals in Guillen's confession and the names provided by DANY CW, all while preparing for trial to commence May 17, 2018. The aforementioned steps are only a fraction of what must be done to effectively utilize the suppressed alternative perpetrator information.[10]

  The less obvious but equally insidious prejudice lies in the fact of the spoliation of evidence due to suppression of over a one year time period. Subsequent to May 7, 2018, the defense has attempted to utilize the May 4, 2018 disclosures but has been largely unable to do so due to spoliation of the information. More specifically, the May 4, 2018 disclosure has provided the defense with the names of multiple individuals that the defense needed to interview and investigate. Subsequently, the defense attempted to interview the majority of these individuals, including Guillen, but because the individuals are now all in custody and have been arrested on unrelated charges they are unavailable to the defense. Had the defense timely been provided with this information in March of 2017 or soon thereafter, the defense could have conducted an investigation into each of them while they were at liberty, including surveillance by a private

---

[10] On May 7, 2018 the defense made a thorough record of investigative measures that it would need to take to investigate information gained through the September 27, 2016 confession. Though we have commenced an investigation it takes a defense team with limited manpower much longer than law enforcement to conduct an investigation, including criminal history searches, in-person interviews that are sometimes out of state, and to obtain phone records.

investigator, attempting in person and/or telephone interviews, and reviewing their social media activity. Defense counsel has also discovered subsequent to the May 7, 2018 conference that many of social media Instagram accounts provided by the government either no longer exist because the accounts have been closed or the accounts are private.[11] As such, the government's May 4, 2018 and subsequent disclosures are of little use to the defense at this late stage when at least a significant portion of the information is either out of reach of the defense due to arrests or no longer exists at all.

After the government's May 13, May 14, and May 15, 2018 disclosures, the defense once again finds itself in the same place where it was on May 7, 2018: in receipt of what is significant, material exculpatory information with no time or ability to utilize it in its defense. Based on our attempted investigation of the May 4, 2018 newly disclosed information, the spoliation of evidence, and the time constraints of the May 17, 2018 jury selection and May 21, 2018 trial, an adequate investigation at this stage is likely futile.

## **CONCLUSION**

For the reasons contained herein, the Court must dismiss the indictment on the grounds of *Brady* violations that have deprived the defendants of Due Process rights.

---

[11] This is particularly unfair as the government has moved *in limine* to introduce social media posts by both defendants. With regard to Pizarro, the government argued that his Instagram posts are direct evidence of the Bishun homicide and prove that he committed the charged crimes. At the same time, the defense's ability to investigate the alternative perpetrators and their associates and their social media posts, at least some of which seem to refer directly to Bishun, is stymied at this late stage.

Very truly yours,

COUNSEL FOR ROBERT PIZARRO
COUNSEL FOR JUAN RIVERA
By:

    /s/
    _____
    Carla M. Sanderson
    Elizabeth Macedonio
    Louis Freeman
    Bobbi Sternheim
    Jeremy Schneider

Cc: all counsel via EC